**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 23-cv-02767

In re: JOHN PATRICK GLENN,

    Debtor.

COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff-Appellee,

v.

JOHN PATRICK GLENN,

    Defendant-Appellant.

---

## ORDER

Appellant/Debtor John Patrick Glenn's ("Glenn") appeals the United States Bankruptcy Court for the District of Colorado's Order and Judgment dated September 28, 2023, as amended October 6, 2023, granting Commodity Futures Trading Commission's ("CFTC") Motion for Summary Judgment. Oral argument would not materially assist in the determination of this appeal. After full consideration of the record and the parties' briefs, the Court **AFFIRMS** the Bankruptcy Court's Order.

### I.  JURISDICTION

Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals from "final judgments, orders and decrees" of the Bankruptcy Court. There is no dispute that the Order fully adjudicated the parties' dispute and is final and that this Court has jurisdiction over the appeal.

## II.   BACKGROUND[1]

### A. The Underlying Scheme

This appeal stems from the uncovering of a Ponzi scheme and the subsequent legal proceedings. In approximately August 2014, Chris Mancuso contacted Glenn—a licensed attorney in Colorado and the managing director of the Glenn Law firm—to ask him to provide paymaster services for Mancuso, John Black, and their affiliated entities, Financial Tree, Financial Solution Group, and New Money Advisors (collectively, "Financial Tree"). Glenn agreed. Apparently unbeknownst to Glenn at the time, Financial Tree had devised a fraudulent scheme to solicit and misappropriate funds from members of the public ("pool participants"). To effectuate its Ponzi scheme, Financial Tree solicited money from the pool participants for the purported purpose of being held in a protected account and used as collateral to secure separate lines of credit to trade binary options and forex contracts in commodity pools. In reality, Financial Tree did not engage in any profitable trading and misappropriated the funds.

As paymaster, Glenn signed a "Paymaster Agreement" providing the Glenn Law Firm would accept funds from pool participants and disburse such funds to Financial Tree in exchange for a fee. To facilitate this process, Glenn would review a Joint Venture Agreement ("JVA") signed by each pool participant. The JVA provided that each pool participant would contribute funds to Glenn's "Attorney Escrow Account" (or "COLTAF

---

[1] The underlying facts as set forth in the parties' briefs submitted in this appeal and in the parties' motions for summary judgment in the adversary proceeding, are undisputed, unless otherwise noted.

account"), after which Glenn would disburse those funds in full, for investment, to a "Managed Fund Account" administered by Financial Solution or New Money, where the funds would remain "protected" in "no-risk" accounts allowing unspecified traders to open lines of credit and generate profits for those clients. The JVA did not disclose that Glenn would receive a paymaster fee for his services.

Between January 2015 and June 2020, over 90 pool participants deposited over $14.32 million into the pools through 134 total wire transfers to Glenn's firm. While serving as paymaster, Glenn received complaints from several pool participants expressing concerns that Black and Mancuso were "defrauding" and "scamming" them out of their funds. These pool participants alleged they had not received any returns on their investments and there was poor communication with Black and Mancuso. Some of the pool participants reported Glenn to the Colorado Supreme Court. Despite these complaints, Glenn continued to serve as paymaster. Ultimately, the Office of Attorney Regulation Counsel opened two investigations on behalf of the pool participants, investigating Glenn's role as paymaster and the whereabouts of the client funds in his COLTAF account. At some point, Glenn was identified as a "person of interest" by the FBI. He met with the FBI and told them what he knew. To date, he has not been charged with a crime.

### B. The California Litigation

On June 15, 2020, CFTC[2] brought a civil enforcement action against Glenn and others in the United States District Court for the Eastern District of California, charging Glenn, The Glenn Law Firm, Financial Tree, Black, Mancuso, and Joseph Tufo with violating several anti-fraud sections of the CEA and CFTC Regulations (the "California Litigation"). CFTC sought, jointly and severally, restitution, disgorgement, and civil monetary penalties pursuant to 7 U.S.C. § 13a-1(d) and 17 C.F.R. § 143.8(b)(1).

On November 4, 2021, CFTC filed a motion for default judgment in the California Litigation against Glenn and all other parties who failed to appear, file a responsive pleading, or otherwise defend the California Litigation. On January 4, 2022, the Magistrate Judge in the California Litigation recommended granting the motion for default judgment and ordering the relief requested in the motion. R. Vol. 2 at 784-833. That recommendation was adopted in full on March 10, 2022, and final judgment was entered in favor of CFTC and against Glenn and the other defendants jointly and severally for restitution in the amount of $10,495,328.38, and against Glenn and the Glenn Law Firm

---

[2] CFTC Commodity Futures Trading Commission ("CFTC") is a federal governmental agency that administers and enforces the Commodity Exchange Act ("CEA"), and promulgates and enforces regulations under that statute, 7 U.S.C. §§ 1-26. The CFTC's mission is, among other things, to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets, and to ensure the financial integrity of all transactions subject to the CEA. 7 U.S.C. § 5(b). Derivatives include, among other things, instruments commonly known as foreign exchange transactions ("forex") and option contracts. The CEA prohibits fraudulent contact in derivatives markets. *See, e.g.*, 7 U.S.C. § 6c. The CFTC is authorized to bring civil enforcement actions in the U.S. District Courts, which "shall have jurisdiction to entertain such actions," whenever it appears that a person "has engaged, is engaging, or is about to engage" in a violation of the CEA or CFTC regulations. 7 U.S.C. § 13a-1(a).

jointly and severally for civil monetary penalties in the amount of $856,314.72. R. Vol. 2 at 835-836.

### C. The Bankruptcy Proceedings

On January 6, 2021, Glenn filed his voluntary Chapter 13 petition in the United States Bankruptcy Court for the District of Colorado. R. Vol. 1 at 3-105. CFTC, which Glenn listed as an unsecured creditor, timely filed proofs of claim against Glenn for restitution and civil monetary penalties. R. Vol. 2 at 132.

On August 11, 2021, CFTC filed an adversary complaint in the bankruptcy proceeding, asserting three claims for relief against Glenn. CFTC sought a judgment of nondischargeability, pursuant to 11 U.S.C. § 523(a) on three claims: restitution, disgorgement, and civil monetary penalties arising out of the California Litigation allegations. At the time, the claims in the California Litigation had not been reduced to judgment.

On February 28, 2022, CFTC filed an amended adversary complaint in the bankruptcy proceeding, seeking to have the restitution and civil monetary claims excepted from discharge as debts resulting from fraud, fraudulent misrepresentation, or false pretenses under 11 U.S.C. § 523(a)(2)(A). The adversary proceeding alleged that Glenn's debts for restitution and civil monetary penalties from the California Litigation arose from his fraudulent acts and were therefore excepted from discharge. R. Vol. 2 at 189.

On March 3, 2022, CFTC conducted a deposition of Glenn for the adversary proceeding. R. Vol. 2 at 189. During the deposition, Glenn invoked his Fifth Amendment right against self-incrimination and refused to provide any substantive responses on

5

topics relating to the California Litigation, including requests to authenticate documents, whether he knowingly and intentionally made false statements to pool participants, and whether he used the Fifth Amendment in bad faith in the California Litigation. R. Vol. 2 at 1187-90, 1201-65.

On July 29, 2022, CFTC filed a Motion for Summary Judgment requesting that the Bankruptcy Court hold the restitution and civil monetary penalties were exempted from discharge. R. Vol. 2 at 152-192. In support of its motion, CFTC put forth several categories of evidence, including the judgment against Glenn in the California Litigation, the sworn declarations of several pool participants, and the sworn declarations of investigators and others who worked on the adversary proceeding and the California Litigation. *Id.* Glenn filed a response to the Motion for Summary Judgment, wherein he did not dispute the vast majority of facts presented by CFTC, offered no facts of his own, and failed to respond to two of the three bases for determining the debts were excepted from discharge: actual fraud and false pretenses. R. Vol. 2 at 2005-24.

CFTC filed two motions concurrently with the Motion for Summary Judgment—a Motion to Preclude [Glenn] from Offering Evidence and for Adverse Inferences against [Glenn] on Topics on Which [Glenn] Invoked the Fifth Amendment ("Motion to Preclude") and a Motion to Estop [Glenn] from Taking Positions in Adversary Proceeding Inconsistent with Findings by the Eastern District of California ("Motion to Estop"). R. Vol. 193-213, 1184-99.

On September 28, 2023, the Bankruptcy Court granted CFTC's Motion for Summary Judgment. R. Vol. 2 at 2091-08. The Bankruptcy Court first determined that the debts for

6

the restitution and civil monetary penalties were valid debts for which Glenn is liable because he was found jointly and severally liable for the restitution and civil monetary penalties in the California Litigation. *Id.* at 2096. The Bankruptcy Court found that CFTC had met its evidentiary burden for establishing that the debts were excepted from discharge under 11 U.S.C. § 523(a)(2)(A). *Id.* The Bankruptcy Court noted that Glenn's only response to the element of false representation was a general denial and he did not provide a response, argument, denial, or evidentiary support contradicting CFTC's claims for false pretenses or actual fraud in any of his responses. *Id.* The Bankruptcy Court thoroughly addressed each basis for exception from discharge under 11 U.S.C. § 523(a)(2)(A) relied on by CFTC and concluded that CFTC was entitled to summary judgment on its claim that the restitution and civil monetary penalty claims against Glenn are excepted from discharge as debts obtained by false pretenses, false representations, and actual fraud under 11 U.S.C. § 523(a)(2)(A). *Id.* at 2096-08. The same day, the Bankruptcy Court denied CFTC's Motion to Estop and Motion to Preclude, "[b]ased on the Court's Order granting [CFTC]'s Motion for Summary Judgment." R. Vol. 2 at 2108. The Bankruptcy Court entered Judgment that same day. R. Vol. 2 at 2114.

Glenn timely appealed the Bankruptcy Court's Order on Summary Judgment. After filing his Notice of Appeal, Glenn converted his Chapter 13 case to a case under Chapter 7 pursuant to 11 U.S.C. § 1307(a) because he could not make payments due under the proposed Chapter 13 plan. *In re Glenn*, No. 21-bk-10051 (Bankr. Colo. 2023), ECF No. 102.

7

### III. APPLICABLE LEGAL STANDARDS

#### A. Standard of Review

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's rulings. 28 U.S.C. § 158(a). Bankruptcy court orders granting summary judgment are subject to *de novo* review on appeal. *In re C.W. Min. Co.*, 798 F.3d 983, 986 & n. 2 (10th Cir. 2015). The Bankruptcy Court's factual findings, including findings regarding intent, are reviewed for clear error. *See In re Johnson*, 477 B.R. 156, 168 (10th Cir. BAP 2012); *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2020). The reviewing court must defer to the facts found by the bankruptcy court "unless it is without factual support in the record or, after examining all the evidence, we are left with a definite and firm conviction that a mistake has been made." *In re Johnson*, 477 B.R. at 168 (quotations omitted). If, however, a "lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to de novo review." *Id.*

#### B. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 to bankruptcy adversary proceedings). A fact is "material" if it is essential to the disposition of the claim under the relevant substantive law. *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541-CMA-CBS, 2017 WL 3425140, at *2 (D. Colo. Aug. 9, 2017).

8

A dispute is "genuine" if the evidence could lead a reasonable jury to return a verdict in favor of either party. *Medina v. David*, No. 14-cv-03037-CBS, 2016 WL 122970, at *2 (D. Colo. Jan. 8, 2016).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1512, 1518 (10th Cir. 1994). In so doing, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324.

The factual record and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517). However, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment in favor of the moving party is proper." *Concrete Works*, 36 F.3d at 1518 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ).

**C. Burden of Proof in the Adversary Proceeding**

Under Section 523, a creditor—in this case, CFTC—bears the burden of establishing by a preponderance of the evidence that its claim is not dischargeable. *Grogan v. Garner*,

498 U.S. 279, 287 (1991); see In re Manriquez, No. 08-cv-00567-CMA, 2009 WL 3015161, *5 (D. Colo. Sept. 17, 2009).

## IV.   ANALYSIS

### A. Mootness

As an initial matter, the Court addresses CFTC's argument that Glenn's conversion of his Chapter 13 bankruptcy case to a Chapter 7 bankruptcy case has mooted the issue of whether Glenn's debt for civil monetary penalties is excepted from discharge.

Under Chapter 7, a discharge granted in bankruptcy does not apply to any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." 11 U.S.C. § 523(a)(7). Courts have parsed this statute into three discrete elements: (1) there must be a debt for a fine, penalty, or forfeiture; (2) that debt must be payable to and for the benefit of a governmental unit; and (3) that debt cannot constitute compensation for actual pecuniary loss. See In re Warfel, 268 B.R. 205, 209 (9th Cir. BAP 2001). The "fine, penalty or forfeiture" may be either criminal or civil in nature. E.g., United States v. WRW Corp., 986 F.2d 138, 145 (6th Cir.1993).

Here, Glenn's debt is for civil monetary penalties owed to CFTC, a governmental unit, and is not compensation for actual pecuniary loss. Accordingly, Glenn's civil monetary penalties are non-dischargeable. Because § 523(a)(7) is self-executing—that is, it does not require either party to obtain a judgment declaring the debt excepted from discharge—Glenn's appeal of the determination of the dischargeability of debtor's debt for civil monetary penalties is moot. See In re Williams, 438 B.R. 679, 687 (10th Cir. BAP 2010).

And because mootness deprives this Court of jurisdiction over the dischargeability of debtor's debt for civil monetary penalties, the Court is left only with jurisdiction over the appeal of the dischargeability of Glenn's debt for restitution. *See Smallwood v. Scibana*, 227 F. App'x 747, 748 (10th Cir. 2007) (explaining that mootness is a jurisdictional doctrine).

### B. Dischargeability Under Section 523(a)(2)(A)

The Court now turns to Glenn's arguments on appeal. Although his brief is not the model of clarity, Glenn generally argues that the Bankruptcy Court erred in granting summary judgment to CFTC as to the dischargeability of his debts because the Bankruptcy Court relied on improper and inadmissible evidence, made "de facto" adverse inferences against Glenn, and improperly relied on the default judgment in the California Litigation as having a preclusive effect. ECF No. 9. The Court considers each issue in turn. Because these issues challenge the Bankruptcy Court's legal conclusions, the Court reviews them *de novo*. *See In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008).

1. The Declarations

First, Glenn argues the Bankruptcy Court erred in relying on the declarations as evidence of the dischargeability of his debts under Section 523(a)(2)(A). He contends that the declarations are hearsay, and he was not given the opportunity to confront his accusers. ECF No. 9 at 18. This argument is without merit.

On summary judgment, a court may only consider admissible evidence. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), However, the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial.

11

*See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). For instance, "if th[e] evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). As relevant here, Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The sworn declarations submitted by CFTC in support of its motion for summary judgment comply with this rule. The declarations attest to each declarant's personal knowledge, cite to record evidence, including Glenn's own emails, and show that the declarants are competent to testify on the matters stated. *See* R. Vol. 2 at 214-1181. Glenn does not argue otherwise. Nor does he challenge any specific statements in the declarations as hearsay—he merely claims that the declarations are "all hearsay" without any legal support. *See* ECF No. 9 at 14, 17, 18. Such general assertions of hearsay do not convince this Court that the Bankruptcy Court erred in considering the declarations. *See Bryant*, 432 F.3d at 1122 (parties may submit affidavits in support of summary judgment despite the fact that the affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form). And to the extent Glenn wanted to confront his accusers, he was free to conduct

12

depositions of the declarants or request an evidentiary hearing—he did neither.[3] Accordingly, the Bankruptcy Court did not err in considering the declarations on summary judgment.

### 2. "De Facto" Adverse Inferences

Next, Glenn devotes much of his brief to arguing that the Bankruptcy Court improperly imposed a "de facto" adverse inference against him due to his invocation of the Fifth Amendment. He claims he was forced to "either waive the Fifth Amendment, and respond to summary judgment or continue to assert the Fifth, and the court would deem the absence of denials as admissions." ECF No. 9 at 10. Again, this argument is without merit.

First, there is no indication that the Bankruptcy Court imposed an adverse inference against him. To the contrary, the Bankruptcy Court expressly denied CFTC's Motion to Preclude, in which CFTC requested that the Court make adverse inferences against Glenn on all topics on which he invoked the Fifth Amendment. Nor did the Bankruptcy Court find that Glenn had admitted any of the allegations. Rather, it found that CFTC had put forth sufficient evidence to support its claims and Glenn had failed to provide any response or evidence to show a genuine dispute of material fact. This Court agrees with the Bankruptcy Court's conclusion.

---

[3] Glenn takes issue with the fact the Bankruptcy Court did not conduct an evidentiary hearing on the motion for summary judgment. Aside from the fact that there is no indication Glenn ever requested a hearing, a formal evidentiary hearing on summary judgment is not required. *See Nolan v. C. DeBaca*, 603 F.2d 810, 812 (10th Cir.1979), *cert. denied*, 446 U.S. 956 (1980). Rather, the parties' right to be heard may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court. *Id.* at 812.

Although Glenn was certainly entitled to assert his Fifth Amendment rights, that decision did not come without costs. *See Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976). An invocation of the Fifth Amendment "is not a substitute for relevant evidence," and a litigant claiming the privilege is not "freed from adducing proof in support of a burden which would otherwise have been his." *Rylander*, 460 U.S. at 758. "In other words, a party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence." *United States v. $148,840.00 in United States Currency*, 521 F.3d 1268, 1274 (10th Cir. 2008) (quoting *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir.1992). Thus, "the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995) (citing Wright, Federal Practice § 2018, at 288).

In sum, a nonmovant's silence <u>alone</u> is not a sufficient basis for liability on summary judgment because, at this stage, the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the non-moving party; but silence in the face of other independent and corroborating evidence allows for a finding of liability on summary judgment. *See, e.g.*, *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) ("defendant's silence [should] be weighed in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability); *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991) ("The negative inference, if any, to be drawn from the

assertion of the [F]ifth [A]mendment does not substitute for evidence needed to meet the burden of production."), *cert. denied*, 502 U .S. 1048 (1992); *United States v. Welch*, No. 11-CV-02292-CMA-KLM, 2013 WL 1444053, at *19 (D. Colo. Mar. 13, 2013) (granting summary judgment on claim where Plaintiff presented facts and evidence in support of its claim and Defendants invoked Fifth Amendment because "despite Defendants' invocation of Fifth Amendment privilege, this Court may infer that Plaintiff's facts are uncontroverted where Defendants have offered no rebuttal evidence"), *report and recommendation adopted*, No. 11-CV-02292-CMA-KLM, 2013 WL 1442627 (D. Colo. Apr. 8, 2013).

Here, contrary to Glenn's characterization of the order, the Bankruptcy Court did not grant summary judgment based solely on an adverse inference or by deeming his failure to dispute the allegations as admissions. Rather, the Bankruptcy Court carefully considered the evidence and undisputed facts before it. CFTC satisfied its burden by submitting bountiful evidence sufficient to establish the elements of its claim, even in the face of its fruitless deposition of Glenn. The burden then shifted to Glenn to establish a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. Glenn failed to do so—he offered no admissible evidence to refute CFTC's presentation of the facts beyond frivolous and conclusory statements. *See* Bankruptcy Court Order, R. 2107 ("[Glenn] failed to meet his burden on summary judgment. As the party opposing summary judgment, [Glenn] must go beyond the pleadings and designate evidence of specific facts showing there is a genuine issue for trial . . . . Glenn has offered no evidence to support his position."). Even on appeal, Glenn has filed to identify any genuine dispute of material fact. Presented with

CFTC's evidence and with no evidence to the contrary, the Bankruptcy Court did not err in finding that the undisputed facts established CFTC was entitled to relief under Section 523(a)(2)(A) as a matter of law.

Second, Glenn briefly argues that Rule 56(d) relieves him from the burden of presenting contradictory evidence. ECF No. 9 at 20. That rule provides:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Glenn argues—without any legal support—that this rule applies because he invoked the Fifth Amendment. ECF No. 9 at 20-21. Thus, he argues the Court should have "issued any other appropriate order" by "conducting an evidentiary hearing as to the invocation of the Fifth Amendment privilege." *Id.* But there is no indication in the record that Glenn cited the rule at any point in the proceedings before the Bankruptcy Court or provided an affidavit or declaration explaining why he could not present facts essential to justify his opposition. Accordingly, Rule 56(d) was never properly invoked in the Bankruptcy Court and the Court will not consider the argument on appeal. *See Abbasid, Inc. v. The Travelers Indem*. Co., 404 F. App'x 253, 255 (10th Cir. 2010) (an issue not raised to the lower court is waived on appeal).

3. Preclusion

Finally, Glenn argues that the Bankruptcy Court erred in in finding that the default judgment against him in the California Litigation had a preclusive effect on the issue of whether he had any ownership interest in any of the Financial Tree entities. ECF No. 9 at 15. Glenn appears to be arguing that without an ownership interest, he cannot be held liable for the restitution and civil monetary penalties. He is mistaken.

First, Glenn either misunderstands or mischaracterizes the Bankruptcy Court's order. The Bankruptcy Court did not apply res judicata or collateral estoppel in its order. To the contrary, the Bankruptcy Court denied CFTC's Motion to Estop, in which CFTC moved to bar Glenn from taking any positions inconsistent with the findings in the California Litigation under the doctrine of collateral estoppel.

But most importantly, whether Glenn had an ownership interest in the Financial Tree entities has no impact on the dischargeability of his debts. The Bankruptcy Court determined that <u>Glenn</u> obtained the money by fraud, fraudulent misrepresentation, or false pretenses. And even if he hadn't, the United States Supreme Court has held that a debtor can be liable for fraud that he did not personally commit because "[Section] 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023). The Supreme Court concluded that "innocent people are sometimes held liable for fraud they did not personally commit, and, if they declare bankruptcy, § 523(a)(2)(A) bars discharge of that debt." *Id.* at 83.

Put simply, "Congress has 'evidently concluded that the creditors' interest in recovering full payment of debts' obtained by fraud 'outweigh[s] the debtors' interest in a

17

complete fresh start." *Id.* (quoting *Gorgan v. Garner*, 498 U.S. 279, 286 (1991). Such is the case here. It is undisputed that Glenn and his law firm were held jointly and severally liable for restitution in the amount of $10,495,328.38 and civil monetary penalties in the amount of $856,314.72. Glenn does not dispute that the Financial Tree entities obtained the money—which flowed through him and which he took a cut of—by fraud. CFTC, as creditor, has an interest in obtaining the debts obtained by fraud. Thus, regardless of whether Glenn had an ownership interest in the Financial Tree entities, the money was obtained by fraud, and that debt is nondischargeable under Section 523(a)(2)(A).

In sum, the Bankruptcy Court properly considered the undisputed facts and evidence before it, correctly concluded that Glenn failed to meet his burden of identifying and designating evidence or specific facts showing there is a genuine issue for trial on CFTC's claim for relief under Section 523(a)(2)(A), and properly granted summary judgment in CFTC's favor. Thus, the Court affirms the Bankruptcy Court's order finding that Glenn's debts for restitution and civil monetary penalties are excepted form discharge under 11 U.S.C. § 523(a)(2)(A).

## V.    CONCLUSION

For the reasons set forth herein, it is **ORDERED** that the September 28, 2023 Order of the Bankruptcy Court for the District of Colorado is **AFFIRMED**.

DATED: September 4, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge